Tombkins, J.,
delivered the opinion of the Court.
This was an action of debt, brought by the Governor of Missouri to the use of N. B. Tucker, administrator de bonis non of Joseph Park, against the securities of Aaron *491 Earis, the original administrator of said Parke. The declaration sets out the bond with the condition, which are in the form prescribed by the law then in force. The bond is dated the-day of June, 1822, and the condition is, that Earis “ do make, or cause to he made, a true and perfect inventory of all and singular the goods, chattels, rights and credits of the said deceased, which have or shall come to the hands, possession, or knowledge of him, the said Aaron Faris, or into the hands or possession of any other person for him; and the same so made, do return and exhibit in the office of the Clerk of the county, for the county of St. Louis, on or before the 17th day of August next, and all and singular the goods and chattels, rights and credits of the deceased, which shall come to the hands, possession, or knowledge of the said Faris; shall well and truly administer, according to law, and pay the debt of the deceased, as far as his assets shall extend and the law directs; and further make, or cause to be made, just and true accounts of his administration, and make due and proper settlements thereof, from time to time, according to law, or the order, sentence, or decree of any Court, having complete jurisdiction, &.c.”
The first breach assigned is, that said Faris did not make any inventory of the goods, chattels, rights, and credits of the said deceased, which came to the hands, possession, or knowledge of him, said Faris, and the same, so made, did not return or exhibit in the office of the Clerk of the Circuit Court for the county of St. Louis, on or before the 17th day of August then next. The second breach is, that said Faris has not well and truly administered, according to law, all and singular (or any) the goods and chattels, rights and credits of the said deceased, which came to the hands, possession, or knowledge of him, the said Aaron Faris, as in and by the said writing obligatory he was hound to do. Third, that the said Aaron Faris did not make just and true accounts, or any account whatever, of his said administration, and make due and proper settlements thereof, as in and by the said writing obligatory, and according to the laws of the land, he was bound to do. Fourth, that heretofore, in the life time of the said Faris, and after the execution of the said writing obligatory, to wit, on the 1st day of August, 1822, at St. Louis, aforesaid, there was in the hands and possession of the said Faris, administrator, as aforesaid, a large sum of money, to wit, the sum of three thousand dollars, of the goods, chattels, rights and credits of the said deceased, and that the said Aaron Faris has not truly administered the same, nor rendered an}' account thereof, as, by the law of the land, and in and by the said writing obligatory he was bound to do.
The defendants, in the Circuit Court, (appellants here,) pleaded; First. That before the 17th day of August, in the year aforesaid, at the county aforesaid, said Faris departed this life, and that no goods, chattels, rights or credits, which were of the said deceased, came to the hands, possession, or knowledge of him, said Aaron, in his life time, or into the hands or possession of any other person for him, said Aaron, in his life time, concluding with a verification. Second. That before the 17th of August, in tlie year aforesaid, at the county aforesaid, the said Faris departed this life, concluding with a verification. Third. That no goods, chattels, rights or credits, which were of said Park, came into the hands, possession, or knowledge of him, the said Aaron, in his lifetime, or into the hands or possession of any other person for him, the said Aaron, in his life time; and of this, said defendants put themselves upon the country, &c. Fourth. That the said sum of money, in the fourth breach mentioned, nor any part thereof, nor any part of the goods and chattels, rights and credits, which were of said Park, was in, or came into, the hands *492 said Aaron Faris, to I)s administered in any manner or form, as the said plaintiff hath, in his said breach, alledged, and of this put themselves upon the country, &c.
The replication to first plea states, that the plaintiff ought not to he barred, &c., because, he says, that after making the said writing obligatory, and in the life time of the said Faris, to wit, on the 4th of July, 1822, to wit, at the county aforesaid, there came to the hands, possession, and knowledge of the said Aaron Faris, goods, chattels, rights and credits, which were of said Joseph Park, deceased, of great value, to wit, of the value of §6,000; and pray this may be inquired of, &c. The replication to the second plea traverses it, and tenders an issue. The plaintiff then joins issue, as tendered by the third and fourth pleas. The jury found, that Faris, by authority derived from Park, sold to one Jacob Hainwalt, of Berkley county, Virginia, a tract of land of said Park, situated in said county and State; that the first payment of the purchase money for said lands, amounting to §3,500, was made by Hainwalt to Faris at the time of sale, of which the sum of S2,800 belonged to Park ; that said last mentioned sum was, by Faris and Park, deposited in the Bank of Maysville, and in a few months thereafter, in the life time of the said Park, drawn out of said .bank, by Faris and Park, and that a short time thereafter, said Faris moved with his family (of which Park was one,) to St. Louis, in this State, and brought the said money with him, and retained the same in his hands. That said Park, in his life time, from his youth upwards, constantly resided in the family of said Faris, as one of the family, until his death, as hereinafter mentioned : and the jury further found, that on the 8th of April, 1819, one Abraham Showers and John Ileldt purchased the laud, above mentioned, from said Hainwalt, in part consideration of which, said Showers and Heldt agreed to pay throe bonds given by Hainwalt to Faris, for the purchase money due on the sale by Faris of Park’s and his own land, which bonds were for the sum of $1,166 67 each; and the jury further found, that Park died at the house of Faris, at St. Louis, about the month of August, 1820. That at the time of his death, he was the owner of a horse and saddle, and trank, at St. Louis, of the value of $100, which then came to the knowledge of said Faris; and they further found, that in December, 1821, said Showers and Heldt paid one of said bonds to Faris’s order, and that Faris received the money due on the other two bonds, the one in December, 3821, and the other in Januaiy, 1822; three-fifths of which sums, amounting to $2,400, belonged to said Park’s estate. And they further found, that Faris did not make an inventory of Park’s estate, and return the same to the office of the Clerk of the St. Louis County Court, on or before the 17th of August, 1822, next after the date of his bond, nor at any time since; and Faris did not render any account whatever of his administration. That Faris did not die before the 17th of August, 1822, hut that he died about the 1st of December, 1822.
And the jury assessed different damages accordingly, as the Court should think that Faris had broken the condition of the bond, as to the money received before the. death of Park; as to that received after his death, and the horse, saddle and trunk; or as to the money received after the death of Park, and the horse, saddle and trunk; or as to the horse, saddle and trunk. The Court being of opinion that the administrator, Faris, had broken the condition of his administration bond, as to the money received after the death of Park, and as to the horse, saddle and trunk, and not as the money received before the death of Park, gave judgment for three thousand dollars, agreeably to the finding of the jury.
*493 The appellant contends that, first, according to the facts found by the jury, the issue joined on the first plea of the appellants, the Court ought to have decided in favor of the appellants. Second. That the issue joined on the fourth plea, ought to have been decided for the appellants. Third. That the issue joined on the second plea, substantially decided for the appellants. Fourth. That no damages could be lawfully assessed on the first, second and third breaches.
The appellant’s counsel contend that the second plea is virtually found for him; because the appellee, in his replication to the first plea, did not traverse the death of the administrator, Faris, but took issue on the other fact stated in that plea, to wit: that no goods, &c., came to Faris’ hands before his death. The two facts, the death of Faris, as alledged in the plea, before the 17th of August, 1822, and that no goods, &c., came to his hands before his death, constitute one defence. His death before the 17th of August, 1822, was pleaded, and properly pleaded, in bar of judgment for not filing an inventory, and might have been properly pleaded' in the first instance, but the appellant chose to plead that connected with the allegation, of no goods, &c., having come to his hands, and it cannot be pretended that the second part of the first plea, unconnected with the first, is a good defence to any one of the breaches; for even were there no goods of the deceased to be administered, ths administrator ought to make a report to the Court of the fact. The allegation of the death of Faris, then, before the 17th of August, 1822, is mere inducement and not traversable, and the Court think the appellee well omitted to traverse it. Although the Court do not think that the security to an andministrator, as such, does, by the act of joining in the execution of the administration bond, become security for the debts previously due from the administrator to the intestate, for money had and received to his use in his lifetime, nor indeed for money of the intestate received after his death, yet the opinion of the Court is, that the jury might very properly assess damages against the security for the neglect of the administrator to file an inventory of such credits of the intestate.
The judgment of the Circuit Court is affirmed.