Miller, J.,
in his dissenting opinion, 89 N. Y. 9, says: “In principle no reason exists why an executor should be held to any other or different obligation in regard to a debt due from him, than he should in regard to any other assets which may come into his hands. No stricter rule should be imposed in his own case than in any other. Primarily, it is presumed that his debts are paid to the estate, and that he has the money to distribute. But this, as in the case of any other demand, is open to inquiry and investigation; and he has a right to show that he was, and is, insolvent and unable to meet his obligation. The statute was not intended to embrace a case where the debt was worthless, and there was an utter inability to pay the same. Any other or different construction would place an insolvent executor in a most unfortunate position. The debt he owes, which was of an ordinary character, would be converted into one for which he would be liable to arrest and imprisonment,- and by virtue of the statute he would become an embezzler of moneys which he had never collected or received as executor, and which he would have been unable by any diligence, effort or means within his power to obtain. While guilty of no wrong, he would still be liable to be punished and treated as a wrong doer and a criminal.'5
And further, that “the statute never could have been intended to convert a worthless debt into a demand, the payment of which might be enforced by imprisonment, and by *615 making sureties liable who never intended or expected to assume any such obligation, and who were not understood to assume it at the time they, became sureties.”
In Lynch v. Dwain, 66 Wis. 490, it is said: “If it is an administrator’s duty to inventory a claim against himself, still it does not conclude him, much less his sureties. ’ ’
In McCarthy v. Frazer, 62 Mo. 263, it is said: “Even had the legislature, in express terms, provided that debts due to the testator by the executor should be money in his hands, the deduction would not follow whereby worthless assets are transmuted into cash, unless, indeed, the creative faculty can be accorded to our law makers, or the touch of Midas to their enactments. ’ ’
And in Scott v. Govenor, 1 Mo. 686, “That the security of an administrator, as such, does not, by the act of joining in the execution of the administration bond, become security for the debts previously due from the administrator to the intestate.
In Rader v. Yeargin, 85 Tenn. 199, the court say: “The surety on an administrator’s bond does not thereby become surety on his note in favor of the estate.” See also U. S. v. Eggleston, 4 Saw. 199; 16 Bull. 392; Lyon v. Osgood, 51 Vt. 707; Condit v. Winslow, 106 Ind. 142; Potter v. Pitcomb, 7 Me. 302; Gay v. Grant, 101 N. C. 206; Hooper v. Hooper, 32 W. Va. 526.
It will be found by comparison that section 6069. Rev. Stat., is a literal copy of the New York statute.
At common law the appointment by a testator of his debtor to be his executor operated as a release or extinguishment of the debt. Williams on Executors (6th Am. Ed.) page 1310. However, “As between the debtor executor and the creditors of the testator, this doctrine is applicable only in cases where there are assets sufficient to satisfy the testator’s debts. For it would be unfair to defraud the creditors of their just debts by a release which is abso *616 lutely voluntary, and therefore the debt due from the executor shall be considered on their behalf as assets in his hands.” Id., page 1314.
The debt due from an administrator to his intestate was also considered assets in his hands.
On the other hand, where a creditor was appointed executor or administrator of his debtor, he had a right to retain for his own debt due to him from the deceased, in preference to all other creditors of equal degree. ‘ ‘ This remedy arises from the mere operation of law, on the ground that it were absurd and incongruous that he should sue himself or that the same hand should at once pay and receive the same debt.” Williams on Ex’rs, 1040.
The rule that the debtor executor or administrator had, paid to himself as executor or administrator his debt to the estate, and, on the other hand, that the creditor executor or administrator had as such paid to himself the debt of the estate to him, was a mere fiction or presumption resorted to from necessity or convenience.
This presumption of payment, however, rested upon the supposition that the executor or administrator had assets which he might retain in payment of his debt, and did not •apply in cases where there were no assets. Williams on Ex’rs, 1317; Hall v. Pratt, 5 Ohio, 73.
So if the debtor executor or administrator is insolvent at the time of his appointment, and so continues, ' the reason of the rule ceases just as clearly, and there is no presumption that the amount of his debt is in his hands as executor, or administrator as so much money. - ; , ,
It is said by Rapallo, J., in Soverhill. v. Huydam, 5 N. Y. 140, that the statute, of which, as heretofore stated, section 6069 of our Revised Statutes is a copy, was intended ■ to and did abolish the common law rule that the appointment by a creditor of his debtor as executor of his will, operated as a release, and that the statute was enacted in. *617 order to obviate the incongruity of requiring the executor to proceed against himself for the collection of the debt. While Thurman, J., in Tracy v. Card, 2 Ohio St. 431, 450, says of our statute, now section 6069, that it introduced no new rule, but only embodied the previous law in the form of a statute. But in either view, whether we regard the first part of the section as abolishing the common law rule, or, the courts already having rejected it, as embodying the law in the form of a statute, it is evident that the latter part of the statute adopts the - common law rule or fiction, in cases where the debt was held not to be released, but to be assets; that the debt of the executor to his decedent had been paid by himself to himself as executor, and that it was to be considered as so much money in his hands as such executor. It follows therefore, that debts of solvent executors only fall within the purview of the section, for as to such only did any reason exist in the common law rule.
If, on the other hand, the object was, as stated by Rapallo, J., to obviate the incongruity of requiring the executor to proceed against himself for the collection of the debt, then it is equally clear that the section applies to solvent executors only, for the law makers must have assumed that a suit, if he could have sued himself, would result in converting the amount of the debt into money in his hands as executor.
Section 6069 provides that the claim of the testator against the executor shall be included in the inventory, and section 6181 provides that “No executor or administrator shall be accountable for any debts inventoried as du6 to the deceased, if it shall appear to the court that they remain uncollected without his fault. ’ ’ These sections were part of the same act. The debt of the executor to his testator is not excepted from the provisions of the latter, but is covered by it, so that our construction of the former is supported by the provisions of the latter; for a different construction raises a conflict between the two.
Harper & Harper, for plaintiff.
Mills Gardner, for defendant.
It may not be out of place here to remark, while we have been considering the matter as though the same rule applied to the debt of an administrator as to that of an executor, that section 6069 does not in terms apply to debts of administrators, and that there is no section which does so apply.
In Raab’s Estate, 16 Ohio St. 274, it was held that on exception to the final account' of an administrator, claiming that lie had omitted to charge himself with the amount of his debt, the court may hear evidence and determine the validity of such claim and the amount of such debt. We think, if on such hearing, it should appear to the court that lie was insolvent and unable to pay the debt at the time of his appointment, and so continued during the whole time of his administratorship, that he should not be required to charge himself in settlement of his accounts with the amount of such debt.
It is doubtful if any debtor ever qualified as an administrator with the knowledge that a failure to pay his debt to the decedent would make him an embezzler, or that any man ever signed liis bond knowing that he was making himself a surety as well as bondsman.
The construction we contend for will not lessen an honest man’s respect for the law and the administration of justice, while the other can hardly fail to persuade him of the truth of Charles Macklin’s observation that “the law is a sort of hocus-pocus science, that smiles in your face while it picks your pockets; and the glorious uncertainty of it is of mair use to the profession than the justice of it.” The judgment of the court of common pleas will be reversed, and judgment rendered for the plaintiff.