REEVES et al. v. BOMAR.

(Court of Civil Appeals of Texas. Ft. Worth. March 29, 1913. On Motion for Rehearing, May 10, 1913.)

1. ESCROWS (§ 14*) — UNAUTHORIZED DELIVERY—FAILURE OF CONSIDERATION.

Where a debtor, who had turned over all of his nonexempt property to his creditors in discharge of his debts, executed a deed conveying to a trustee for his creditors a part of his homestead in consideration of the agreement of certain of the creditors that they would have bankruptcy proceedings instituted by them against him dismissed, and deposited the deed in escrow, the deed was delivered without authority, and such creditors not only failed to dismiss the bankruptcy proceedings, but resisted the debtor's efforts to have them dismissed, he was entitled to a cancellation of the deed and to recover possession of the property thereby conveyed.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14;* Deeds, Cent. Dig. § 131.]

2. JUDGMENT (§ 197*) — DISMISSAL FOR LACK OF PROOF—FORM OF JUDGMENT.

Where the trial court held that no relief could be granted in a cross-action by certain defendants, because of insufficiency of the evidence, it should have rendered judgment on the merits against the cross-petitioners, instead of dismissing the cross-action without prejudice.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 357, 359; Dec. Dig. § 197.*]

On Motion for Rehearing.

3. APPEAL AND ERROR (§ 1175*) — DISPOSITION OF CAUSE — REMANDING FOR NEW TRIAL.

Where the court erroneously dismissed a cross-action without prejudice for insufficiency of the evidence, instead of rendering judgment on the merits, and gave as its reason therefor that the facts were not fully developed, upon a reversal the cause would be remanded for a new trial instead of rendering judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Cooke County; Clem B. Potter, Judge.

Action by E. P. Bomar against William Reeves and others. From the judgment, defendants appeal. Affirmed in part, and reversed and remanded in part on rehearing.

Chas. Kassel, of Ft. Worth, A. S. Coke, of Dallas, and W. E. Murphy, of Gainesville, for appellants. Davis & Davis, of Gainesville, and D. T. Bomar, of Ft. Worth, for appellee.

SPEER, J. This action was brought by E. P. Bomar against William Reeves and others to cancel a certain deed of conveyance, and to recover a tract of land in Cooke county, Tex. The allegation was made that the conveyance had been executed in consideration that William Reeves and others whom he represented would cause to be dismissed a proceeding previously instituted by them against Bomar to have him declared a bankrupt, and that, contrary to such agreement, the said Reeves and those whom he represented not only did not dismiss such bankruptcy proceedings, but contested the plaintiff's efforts to have the same dismissed. The petition further alleged that the property conveyed was the homestead of plaintiff, and that the deed had been delivered without authority. Upon issues properly joined the trial court found in favor of the plaintiff and the defendants Reeves, Washington County State Bank, and the First State Bank & Trust Company have appealed.

[1] The following are the findings of fact and conclusions of law upon which such judgment was entered:

"E. P. Bomar was an accommodation in-

dorser for the Wolfe City Milling Company, of Wolfe City, and the Medlin Milling Company, of Fort Worth, Tex., to the extent of about $90,000, for the Wolfe City Milling Company and about $390,000 for the Medlin Milling Company.

"These concerns failed about August 1, 1911, and because of such failure E. P. Bomar, who aside from such accommodation indorsements was worth something above $200,000 above debts and liabilities, became involved to such extent that his assets were not sufficient to meet his obligations, including said accommodation indorsements.

"A meeting of the creditors of said two milling companies was held at Ft. Worth on August 8, 1911, and at this meeting said Bomar proposed to turn over to his creditors all of his nonexempt property, provided they would accept the same and discharge him from liability. A very large majority of the creditors in number and amount were willing to this agreement, and a written contract was prepared to that effect and signed by the bulk of the creditors.

"Defendant William Reeves, for himself and as the authorized agent for the Washington County State Bank and the First State Bank & Trust Company, participated in this meeting, and through his attorneys made suggestions in reference to the provisions of the contract, but when the contract was reduced to writing and signed by a majority of the creditors, in number and amount, said Reeves refused to sign for himself and the two banks which he represented, unless said Bomar indorsed an indebtedness of about $12,000, due from said Medlin Milling Company to said First State Bank & Trust Company, represented by an overdraft.

"Said Bomar declined to indorse any of this indebtedness, except about $5,000 of the same, and the other creditors at this time declined to permit said Bomar to indorse any except said $5,000, or to allow it to share in the assets which he was to turn over.

"Said Reeves and said Washington County State Bank and said First State Bank & Trust Company thereupon filed a petition in the District Court of the United States for the Eastern District at Sherman, to have said Bomar adjudicated an involuntary bankrupt, and filed a like petition in the District Court of the United States for the Northern District of Texas at Ft. Worth against said Medlin Milling Company. Soon after this another meeting of the creditors of said Milling Company and said Bomar was held at Ft. Worth, at which said Reeves attended, representing himself and said Washington County State Bank and said First State Bank & Trust Company, and at this meeting said written contract which had been prepared at the previous meeting was signed by said Reeves and said two banks, and thus became the written agreement of all of the

creditors. At this meeting one of the matters sought to be accomplished was the dismissal of the bankruptcy proceedings, which the creditors feared would bring about a sacrifice of assets. At this meeting it was verbally agreed, all the other creditors consenting, that Bomar should indorse the overdraft to said First State Bank & Trust Company, and allow it to share ratably in his assets. It was further verbally agreed that said Bomar would convey the 7⅕ acres of land described in his petition to N. Harding, trustee for the Creditors' Committee, provided said Reeves and his associates would dismiss said bankruptcy proceedings pending in the United States District Court for the Eastern District of Texas, and that said Bomar and his wife would execute a deed conveying said 7⅕ acres of said land to said Harding, and that the same should be deposited in escrow to be delivered to said Harding when said bankruptcy should be dismissed.

"E. P. Bomar was a married man, and the head of a family, and had resided continuously in Gainsville for more than 35 years, and said 7⅕ acres of land had for many years, and ever since its acquisition, been used as a pasture lot for his milch cows, buggy and work horses and devoted to home uses, and in connection with his residence constituted a part of his homestead.

"William Reeves and his two associates did not dismiss said bankruptcy proceedings at Sherman, Tex., as they agreed to do, but resisted all the efforts of said Bomar to have the same dismissed, and said Bomar was under the necessity of employing counsel to resist said bankruptcy proceeding, and finally secured a trial upon the merits and procured a decree dismissing the petition. Said Bomar and his wife, Alice Bomar, in compliance with the agreement, executed a deed to said 7⅕ acres of land, and deposited it in escrow to be delivered to said Harding when said bankruptcy proceedings should be dismissed; but, with the consent of D. T. Bomar, who had no authority to represent said E. P. Bomar, said deed was delivered to said Harding before the dismissal of said proceedings, and the same was never in fact lawfully delivered to him.

"There were two agreements between said Bomar and his creditors, one being the written agreement above referred to and the other the verbal agreement upon the part of said Bomar to convey the 7⅕ acres of land, which he had always claimed as a part of his homestead, provided the bankruptcy proceedings should be dismissed. Said Bomar received no consideration for the conveyance of the 7⅕ acres, except the agreement for the dismissal of the bankruptcy proceedings, which agreement was never complied with, and the said Reeves and his two associates never did intend to comply therewith. E. P. Bomar fully complied with his agreement with his creditors, and the funds turned

over by E. P. Bomar under the written contract have been administered by said committee, at least to the extent of 55 per cent. of same, and transferred to them all his nonexempt property.

"As to the law, I conclude that E. P. Bomar entered into two contracts, one a written contract for the delivery to the Creditors' Committee of all his nonexempt property, which contract was between E. P. Bomar and all his creditors.

"I find that there was a second contract, which was verbal, and it was between said Bomar on one side, and the Creditors' Committee on the other, and that said Reeves and his two associates were parties to such verbal contract, by the terms of which said Reeves and his associates were not only to acquire an interest in the 7⅕ acres of land, but the whole of said overdraft was to share equally with Bomar's other creditors in the property turned over to the committee.

"I therefore conclude that the two contracts are separate, and that the deed from Bomar and wife was delivered to the trustee of the Creditors' Committee without authority, and that said Bomar and wife received no consideration whatever for said conveyance, and the same is not binding upon said Bomar.

"I therefore conclude that the plaintiff, E. P. Bomar, is entitled to the recovery of the land in controversy, and such judgment is accordingly entered.

"In reference to the cross-answer filed by the other defendants against the defendant Reeves and his associates, the record is not in shape for the settlement of that controversy, because there is no proof showing the exact amount of E. P. Bomar's indebtedness, entitled to share in the property conveyed, and for that reason I conclude that it is my duty to dismiss the cross-answer without prejudice."

We adopt the finding of fact as being supported by the evidence introduced, and approve the conclusions of law based thereon in so far as the appellee Bomar's right to recover is concerned.

[2] With respect to the cross-action of those defendants who sought judgment over against William Reeves, the Washington County State Bank, and the First State Bank & Trust Company, we conclude that the trial court erred in dismissing the same without prejudice. Under the facts found the judgment should have been one disposing of the merits of the plea; that is, that the complaining defendants take nothing by their cross-action and the defendants Reeves, Washington County State Bank, and the First State Bank & Trust Company recover of such other defendants all costs of such plea over, and judgment is here rendered accordingly. Huston v. Berry, 3 Tex. 235; Tex. & Pac. Ry. Co. v. Murphy, 46 Tex.

367, 26 Am. Rep. 272; Hander v. Baade, 16 Tex. Civ. App. 119, 40 S. W. 422.

The judgment of the district court is therefore affirmed in all respects affirmed as to appellee E. P. Bomar, and reversed and rendered in favor of William Reeves, Washington County State Bank, and the First State Bank & Trust Company on the cross-pleas of the other defendants.

Affirmed in part and reversed and rendered in part.

## On Motion for Rehearing.

[3] We have concluded that the motion of appellees Noah Harding, Ft. Worth National Bank, Traders' National Bank, American Exchange National Bank, Texas Bank & Trust Company, Adoue & Lobit, and the Citizens' State Bank for a rehearing should be granted to the extent of remanding the cause for another trial as to the issues involved in their cross-action against appellants. The reason given by the trial court for not rendering judgment on the merits was, in substance, that the facts were not fully developed. Under these circumstances it is, perhaps, our duty to remand rather than to render, even though the complaining appellees have not briefed the point thus raised by appellants.

Appellees' motion is therefore granted to the extent indicated but otherwise overruled.